```
               UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION
```

```
CRAIG SCOTT PARRISH,            :
                                :
        Plaintiff,               :   NO:  1:13-CV-00633
                                :
    v.                          :
                                :   OPINION AND ORDER
THE CITY OF WILMINGTON,         :
et al.,                         :
                                :
        Defendants.             :
```

This matter is before the Court on the Motion to Dismiss of Defendant Richard Stanforth (doc. 7), Defendants' the City of Wilmington and Randy Riley's Motion to Dismiss (doc. 9), Plaintiff's Consolidated Response (doc. 15), Defendant Stanforth's Reply (doc. 16), and Defendant City of Wilmington and Riley's Reply (doc. 17). For the reasons indicated herein, the Court DENIES Defendants' motions.

**I. Background**

The following is alleged in Plaintiff's Complaint, which the Court will take as true for purposes of its consideration of Defendants' motions to dismiss. Defendant the City of Wilmington ("Wilmington") hired Plaintiff Craig Scott Parrish ("Parrish") in June 1988 as Superintendent of the City's Parks and Recreation Department (doc. 1). Plaintiff reported to the Mayor and served Wilmington well (Id.). In early January 2012, a change of leadership occurred when Defendant Randy Riley ("Riley") assumed the position of Wilmington's mayor (Id.). Riley appointed

Defendant Rick Stanforth president of the Park Board (Id.).

Although in the past, Plaintiff had reported directly to the mayor, Stanforth informed Plaintiff in their first meeting that Plaintiff would instead report to Stanforth (Id.). Plaintiff understood this to mean Stanforth intended to act as his direct supervisor (Id.).

About a month later, on February 6, 2012, Stanforth approached Plaintiff and informed him "we're going to terminate your employment," because we are "going in a different direction" (Id.). Plaintiff indicates he had no warning and he was stunned (Id.). Stanforth allegedly further advised Plaintiff that if Plaintiff would submit a resignation letter, Wilmington would not oppose his unemployment benefits claim (Id.). Stanforth allegedly demanded that Plaintiff submit such letter before the City's Park Board meeting, which was to begin a few hours later (Id.).

Plaintiff immediately met with the City's Human Resources Manager Dan Mongold, who confirmed the City would not oppose an unemployment benefits claims should Plaintiff submit a letter of resignation (Id.). Plaintiff next met with Defendant Mayor Riley, to whom he relayed his conversation with Defendant Stanforth, and to whom he expressed his dismay that his long career with Wilmington was suddenly ending (Id.). Defendant Mayor Riley told Plaintiff that Plaintiff could go home and pick up any personal effects at a later date (Id.).

Plaintiff alleges that due to the time pressure imposed by Defendants he felt he had no choice but to immediately submit a letter of resignation (Id.).  Plaintiff returned to meet Dan Mongold, who typed the letter for Plaintiff (Id.).  The letter, which Plaintiff deliberately did not sign, indicated Plaintiff's resignation was immediate, as of February 6 (Id.).

Plaintiff alleges on information and belief that Defendants Riley and Stanforth had decided to force Plaintiff's resignation so that Defendant Stanforth could take Plaintiff's job (Id.).  Plaintiff alleges the local newspaper coverage showed Stanforth wanted the job, although ultimately, Stanforth did not get it (Id.).  Defendant Stanforth resigned his position as president of the Park Board in March, only two months after his appointment (Id.).

Plaintiff alleges his termination violated the City's progressive discipline policy, because he was classified as a civil servant, and could only be terminated for cause (Id.). Moreover, Plaintiff alleges the policy requires that before the City disciplines or terminates an employee for cause, it must schedule a pre-disciplinary conference (Id.).  Plaintiff alleges Defendants failed to advise him of his rights and failed to schedule a pre-disciplinary conference as required (Id.).  Finally, Plaintiff alleges the City simply lacked cause to terminate his employment (Id.).

Plaintiff contends in his Complaint that he was constructively terminated without due process (Id.). He brings two claims pursuant to 42 U.S.C. § 1983, first, contending Defendant Mayor Riley and the City violated his due process rights, and second contending that Defendant Stanforth acted in an intentional, willful, and malicious manner to force Plaintiff to involuntarily resign (Id.). Defendants moved to dismiss Plaintiff's Complaint (docs. 7, 9); Plaintiff has responded (doc. 15); and Defendants replied (docs. 16, 17), such that this matter is ripe for the Court's consideration.

**II. Motion to Dismiss Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (20047). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa

4

Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

A motion to dismiss is therefore a vehicle to screen out those cases that are impossible as well as those that are implausible. Courie, 577 F.3d at 629-30, citing Robert G. Bone, *Twombly*, Pleading Rules, and the Regulation of Court Access, 94 IOWA L. REV. 873, 887-90 (2009). A claim is facially plausible when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Iqbal, 129 S.Ct. at 1949. Plausibility falls somewhere between probability and possibility. Id., citing Twombly, 550 U.S. at 557. As the Supreme Court explained,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.
> Id. at 1950.

The admonishment to construe the plaintiff's claim liberally when evaluating a motion to dismiss does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclusions. Wright, Miller & Cooper, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint…must

5

contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984), quoting In Re: Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. 1981); Wright, Miller & Cooper, Federal Practice and Procedure, § 1216 at 121-23 (1969). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988).

**III. Discussion**

**A. Defendants' Motions**

Defendant Stanforth argues that because Plaintiff resigned, the Park Board did not have a chance to begin ordinary termination proceedings against him (doc. 7). In Stanforth's view, therefore, because pre-deprivation procedures were impracticable, the only process due was an adequate post-deprivation remedy (Id.). In this case, contends Defendant Stanforth, Plaintiff does not allege he ever requested a post-deprivation hearing or followed the grievance procedures set forth in the handbook (Id.).

6

Stanforth further argues that even if the Court were to find Plaintiff was due pre-resignation notice or a post-deprivation hearing without a request, Plaintiff could not seek relief without pleading first the inadequacy of the state administrative processes and remedies (Id. citing Jefferson v. Jefferson County Pub. Sch. Sys., 360 F.3d 583, 588 (6th Cir. 2004); Parratt v. Taylor, 451 U.S. 527 (1981)).  Under this rule, the "Parratt Rule," Plaintiff is required to establish one of the following: 1) the state did not have a remedy; 2) the state had a remedy but it was inadequate; or, 3) the state had an adequate remedy but misapplied or did not apply that remedy (Id. citing Hahn v. Star Bank, 190 F.2d 708, 716 (6th Cir. 1999).  Citing Benick v. Knox County Health Dept., Case No. 2:11-CV-0855, 2013 U.S. Dist. LEXIS 78940, *5 (S.D. Ohio June 5, 2013), Defendant Stanforth contends Plaintiff must plead that post-deprivation remedies were inadequate or face dismissal (Id.).

Stanforth further argues he is entitled to qualified immunity (Id.).  Such immunity attaches where 1) Plaintiff has not shown a constitutional violation occurred, and 2) where the particular constitutional right at issue was not clearly established (Id. citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). In Stanforth's view, Plaintiff cannot show a violation of his due process rights, because, as argued above, Plaintiff has not shown the inadequacy of post-deprivation remedies (Id.).  Stanforth further argues it is not clearly established that pre- or post-deprivation remedies must be provided to an employee who resigns

7

(Id.).

Defendants Wilmington and Mayor Riley similarly filed a motion to dismiss (doc. 9). Their arguments track those of Stanforth: they contend Plaintiff resigned, that he failed to allege inadequacy of state remedies, and that Riley is entitled to qualified immunity (Id.). Wilmington further argues Plaintiff has not shown a municipal policy that caused a constitutional violation such that the City could be held liable pursuant to Section 1983 (Id. citing Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658, 694 (1978)).

**B. Plaintiff's Response**

Plaintiff responds that he can rebut the presumption of a voluntary resignation by showing the resignation was involuntarily procured (doc. 15, citing Rhoads v. Bd. of Educ. Of Mad River Local School Dist., 103 Fed. Appx. 888, 895 (6th Cir. 1994)). Plaintiff indicates the test of voluntariness is whether an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if in the employee's position (Id.). Plaintiff further indicates the factors to consider in evaluating voluntariness are 1) whether the employee was given an alternative to resignation, 2) whether the employee understood the nature of the choice given, 3) whether the employee was given a reasonable time in which to choose, and 4) whether the employee could select the effective date of resignation (Id.).

In this case, Plaintiff argues, the Complaint shows he

8

was not given an alternative to resigning as Stanforth simply told him "We're going to terminate your employment" (Id.). Plaintiff contends he did not understand the "nature of the choice" given because he was neither advised of his procedural rights nor of the factual basis of his termination (Id.). Plaintiff contends he was not given a "reasonable time" to decide because Stanforth demanded that he submit his resignation letter before the Park Board only a few hours later (Id.). Finally, Plaintiff contends he was not permitted to choose the effective date of resignation because the City's human resource manager typed up the letter and provided Plaintiff's resignation would be immediate (Id.). Taken together, Plaintiff argues, the allegations are sufficient to show that his resignation was involuntary and amounted to a constructive discharge (Id.).

Plaintiff next addresses Defendants' reliance on the "Parratt Rule" (Id.). Plaintiff cites a line of authority showing that in certain circumstances the wrongful denial of pre-deprivation procedures is sufficient for a due process claim to lie and that Plaintiff is not required to plead or prove that post-deprivation process is inadequate (Id. citing Zinerman v. Burch, 494 U.S. 113, 125 (1990), Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991), Mertik v. Blalock, 983 F.2d 1353 (6th Cir. 1993), Mitchell v. Fankhauser, 375 F.3d 477 (6th Cir. 2004)). Plaintiff contends the "Parratt Rule," as explained in these cases, only applies where the deprivation of plaintiff's property interest is

9

the result of "random and unauthorized" act of a government official (Id.). Here, Plaintiff argues, his Complaint alleges Defendants' actions were not random and unauthorized, but rather premeditated and motivated by the purpose of moving Stanforth into Plaintiff's job (Id.). Plaintiff further argues he spoke with Stanforth, the Mayor, and the human resources manager, and none of them advised him of his procedural right to a pre-termination hearing (Id.). Because the City's top officials were involved in securing his resignation, Plaintiff contends Defendants cannot argue their actions were "unauthorized" (Id.). In Plaintiff's view, the Court can and should find that he was entitled to a pre-termination hearing and that he is not required to show post-termination procedures were inadequate (Id.). As such, he argues, the motions to dismiss should be denied (Id.).

Plaintiff next addresses Defendants' claim that they are entitled to qualified immunity (Id.). He contends there is no question that at the time of his termination that he had a right to procedural due process, including a pre-termination hearing and that such right was clearly established (Id. citing Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985)). Plaintiff argues Defendants should have clearly understood they were under an affirmative duty not to coerce Plaintiff to resign and forfeit his right to pre- and post-termination hearings (Id. citing Guercio v. Brady, 911 F.2d 1179, 1184 (6th Cir. 1990)). Finally, Plaintiff argues the allegations show both Defendants Riley and Stanforth

10

participated in the scheme to force him out of his job, such that Riley cannot claim the allegations against him are inadequate (Id.).

As for the City, Plaintiff argues Wilmington may also be held liable pursuant to Section 1983 because Mayor Riley qualifies as a policy-maker (Id. citing Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978)). Relying on Paige v. Coyner, 614 F.3d 273, 284 (6th Cir. 2010), Plaintiff contends there is no real question that Riley's actions can represent official policy for the City (Id.).

**C. Defendants' Replies**

Defendant Stanforth contends there is "uncertainty" as to whether an employee can claim he was deprived of pre-termination due process when the employee resigns, relying on Nunn v. Lynch, 113 Fed. Appx. 55, 2004 U.S. App. LEXIS 19190 (6th Cir. 2004), and Walters v. City of Norton, 181 F.3d 106 [published at 1999 U.S. App. LEXIS 11400](6th Cir. May 28, 1999). Due to such uncertainty, claims Stanforth, he should be entitled to qualified immunity. Stanforth further argues that should the Court find this case distinguishable from his cited authorities, the Court should find persuasive Giglio v. Dunn, 732 F.2d 1133 (2d Cir. 1984), where an employee was informed he would be terminated unless he resigned, and the Court rejected due process claims concluding that a "pre-coercion" hearing would have been impractical and virtually impossible (Id.). The Second Circuit found that a resignation is

11

a face-saving device and that the plaintiff could have availed himself of post-termination processes (Id.).

Defendants Wilmington and Riley contend in their Reply that Plaintiff did not sufficiently plead constructive discharge, as in their view he did not establish intolerable working conditions or that he was subjected to such conditions to encourage him to quit (doc. 17). Defendants reiterate in their view that the "Parratt Rule" applies such that "when pre-deprivation process is impossible, the State [must] offer the next best thing, meaningful post-deprivation process" (Id.). Because Plaintiff did not allege that post-termination process was inadequate, Defendants argue his Complaint fails to allege a procedural due process violation (Id.).

Riley further argues he is entitled to qualified immunity because in his view the law is not clearly established as to what process is due when an employee resigns (Id.). Riley contends the Complaint merely indicates that he failed to contradict Stanforth such that he did not act to violate a clearly established right (Id.).

Defendant Wilmington argues it cannot be held liable under Monell because Plaintiff's allegations against Riley, as policy-maker, are too superficial to impose liability (Id.). In Wilmington's view, Plaintiff's allegations against Riley are simply too threadbare to support municipal liability (Id.).

12

**IV.  Discussion**

       Having reviewed this matter, the Court has concluded that Plaintiff's Complaint survives Defendants' motions to dismiss.  The Court is mindful of the fact that it must construe all well-pleaded facts liberally in favor of the party opposing the motions, here, the Plaintiff.  Scheur, 416 U.S. 232, 236.  Even a cursory review of the Complaint shows Plaintiff has raised allegations, that if taken as true, give rise to a plausible claim for denial of procedural due process rights.  The Court can draw the reasonable inference that Defendants coerced Plaintiff to resign, and did so in a deliberate fashion exercising their authority such that the "Parratt Rule" is inapplicable.  As such, Plaintiff has adequately pleaded that he was denied a pre-termination hearing when Defendants did not advise him of his rights, cornered him with the possibility of losing unemployment benefits, and told him they needed an answer for that evening's meeting.  Plaintiff has shown this was not a voluntary resignation by pleading that he did not sign the letter, which was prepared by the human resources manager, and he did not choose the date of his resignation.  Plaintiff has essentially plead that the termination was foisted upon him.

       The Court finds Defendants' reading of cited case law incorrect and not on point with the facts as alleged in this case.  In Nunn the facts showed the Plaintiff's resignation was voluntary, because he resigned some ten days after the supervisor he had conflict with was already gone.  113 Fed. Appx. 55, 60.   Here,

13

Plaintiff was confronted with two superiors who appeared firmly entrenched when they told him "we're going to terminate your employment." Similarly, Walters and Giglio can be distinguished because the Defendants in such case acted in a random and unauthorized manner. 1999 U.S. App. LEXIS 11400 at *10; 732 F.2d 1133 (Giglio alleged to have lost job to informal unofficial and unauthorized threats by individual superiors, and not by formal official action by the Board of Education). Here, it is alleged that the Mayor of the City acted within his authority and planned with Stanforth to force Plaintiff out of his job.

The Court further finds neither individual Defendant entitled to qualified immunity. Plaintiff has alleged he was classified as a civil servant, and as such, he could only be terminated for cause. Plaintiff's right to the procedural due process of a pre-termination hearing was a clearly established right. Cleveland v. Loudermill, 470 U.S. 532 (1985). Moreover, reasonable officials in the shoes of Defendants would have known that forcing Plaintiff out of his position without due process amounted to a constitutional violation. Plaintiff adequately plead that both Defendants Riley and Stanforth participated in the effort to force him out quickly without advising Plaintiff of his rights or giving him a hearing.

Finally, the Court finds no question that Riley, as Mayor of Wilmington, was a "policy-maker" for purposes of imposing potential liability on the City. Pembaur v. City of Cincinnati,

14

475 U.S. 468, 480 (1986).  Plaintiff has adequately alleged as much, such that the motion to dismiss as to the City is properly denied.

**IV. CONCLUSION**

Having reviewed this matter, and for the reasons indicated herein, the Court finds Plaintiff has adequately stated claims for denial of his procedural due process in relation to his termination from his more than twenty year tenure working for Wilmington.  The Court does not find well-taken Defendants' arguments to the contrary, rejects their invocation of qualified immunity, and rejects Wilmington's claim that it is not potentially liable as a municipality.

Accordingly, the Court DENIES the Motion to Dismiss of Defendant Richard Stanforth (doc. 7) and DENIES Defendants' the City of Wilmington and Randy Riley's Motion to Dismiss (doc. 9).

SO ORDERED.


Dated: February 28, 2014        s/S. Arthur Spiegel
                                S. Arthur Spiegel
                                United States Senior District Judge

15